1  Thomas P. Riley, SBN 194706
   LAW OFFICES OF THOMAS P. RILEY, P.C.
2  First Library Square
   1114 Fremont Avenue
3  South Pasadena, CA 91030-3227

4  Tel: 626-799-9797
   Fax: 626-799-9795
5  TPRLAW@att.net

6  Attorneys for Plaintiff
   J & J Sports Productions, Inc.

7
                    UNITED STATES DISTRICT COURT
8
                    NORTHERN DISTRICT OF CALIFORNIA
9

10
   J & J Sports Productions, Inc.,          Case No. CV 08-0990 PVT
11
12            Plaintiff,                     PLAINTIFF'S AFFIDAVIT IN
                                             SUPPORT OF PLAINTIFF'S
13                                           APPLICATION FOR DEFAULT
              vs.                            JUDGMENT BY THE COURT
14
15 Israel Valencia Garcia, et al.

16
              Defendant.
17

18    PLAINTIFF'S AFFIDAVIT IN SUPPORT OF PLAINTIFF'S APPLICATION
19              FOR DEFAULT JUDGMENT BY THE COURT

20    STATE OF CALIFORNIA                )
21                                       ) ss:
22    COUNTY OF SANTA CLARA              )

23    I, JOSEPH M. GAGLIARDI, being duly sworn, deposes and states the
24 following:
25
26
27
28

1.    I am the President of Plaintiff, J & J SPORTS PRODUCTIONS, INC., and as such I am fully familiar with the facts, circumstances, and proceedings heretofore had herein.

2.    I make this affidavit in support of Plaintiff's request to recover statutory damages, including attorneys' fees, investigative costs, and interest in the within request for judgment by default.

3.    Our company J & J Sports Productions, Inc., is a closed-circuit distributor of sports and entertainment programming.  Our company purchased and retains the commercial exhibition licensing rights to the *Fernando Vargas v. Shane Mosley Championship Fight Program* (hereinafter "Program") which was broadcast on February 25, 2006.  Our company thereafter marketed the sub-licensing (commercial exhibition) rights in the Program to our company's commercial customers (i.e., casinos, racetracks, bars, restaurants, and nightclubs).

4.    Simultaneously with the advent of pay-per-view programming, we began to experience a serious erosion in the sales of our own proprietary programming to our commercial customers throughout the United States of America.  To protect ourselves, we endeavored to find out what was the basis for the erosion and determined from our customers that the cause of the erosion of our customer base was the rampant piracy of our broadcasts by unauthorized and unlicensed establishments (signal pirates).

5.    In response, we embarked upon a nationwide program to police our signals for the purpose of identifying and prosecuting commercial establishments which pirate our programming (including the *Fernando Vargas v. Shane Mosley Championship Fight Program*, the subject program involved in this lawsuit).

6.    Specifically, J & J Sports Productions, Inc., retained, at considerable expense, auditors and law enforcement personnel to detect and identify signal pirates.

To ensure that only illegal locations were visited by the auditors, our company compiled our confidential list of customers (authorized and legal locations) who paid the required license fee to broadcast the Program, and this list was distributed to participating auditing and law enforcement agencies in strict confidence.

7.    The above referenced *Program* contained several televised under-card bouts, color commentary, along with the main event prizefight between Fernando Vargas and Shane Mosley. As set forth within the sworn Affidavit of Gary Gravelyn, it was the beginning of sixth round of the undercard bout between Calvin Brock and Zuri Lawrence that was observed by Mr. Gravelyn as being *unlawfully* exhibited by the establishment doing business as "La Copa" on Saturday, February 25, 2006, as at no time did this establishment ever lawfully license the *Program* from our company for such a purpose.

8.    It is essential that I communicate to the Court that to the best of my knowledge our programming is *not* and cannot be mistakenly, innocently or accidentally intercepted. Some methods that a signal pirate can unlawfully intercept and broadcast our programming are as follows without limitation:

> A.    The use of a "blackbox", "hotbox", or "pancake box" which is purchased for a fee and when installed on a cable TV line will allow for the descrambled reception of a pay-per-view broadcast, or

> B.    The use of a "smartcard" or "test card" or "programming card" which is purchased for a fee and when installed on a DSS satellite receiver line will allow for the descrambled reception of a pay-per-view broadcast, or

C.   The purposeful misrepresentation of a commercial establishment as a residential property to allow the fraudulent purchase of a pay-per-view (or prohibited) programming at the residential rate, or

D.   The use of illegal cable drop or splice from an apartment or home adjacent to the commercial establishment premises (which would purchase the broadcast at a residential price and divert the program to the commercial establishment), and/or

E.   The purchase of other illegal unencryption devices, and the purchase of illegal satellite authorization codes which are readily available on the internet, in trade publications, and through "word of mouth".

9.   Turning these facts to the matter before the Court I have been advised by counsel that the Court has wide discretion in the awarding of statutory damages for the nefarious, illegal and debilitating activities of signal pirates which are injurious to our company and our lawful customers.

10.   It is respectfully submitted to this Honorable Court that the unchecked activity of signal piracy not only has resulted in our company's loss of several millions of dollars of revenue, but also has a detrimental effect upon lawful residential and commercial customers of cable and satellite broadcasting whose costs of service are increased significantly by these illegal activities, including the depravation of tax revenue to the communities where our potential customers reside, and the denial of benefits such tax revenue would provide the residents of such communities.

11.   We, at J & J Sports Productions, Inc., believe that the persistent signal piracy of our programming costs our company, our customers, and their communities, millions of dollars annually resulting in part, from the perceived lack of consequences (including nominal or minimal damage awards by the Courts who hear our cases) for such unlawful interception and exhibition by the commercial signal pirates.

12.    For these reasons I ask this Honorable Court to grant the **maximum** allowance for statutory damages due to the fact that such actions are *per se* intentional and do not and cannot occur without the willful and intentional modification of electronic equipment, the willful and fraudulent misrepresentation of a commercial establishment as a residential one, the removal of cable traps or devices designed to prevent such unauthorized exhibits, or other willful and/or international acts purposely designed to obtain our programming unlawfully.

13.    I am also troubled by the fact that the Courts have placed undue weight upon whether the *promotion* of programming by the signal pirates (rather than the *exhibition* of the programming itself) was done willfully and/or for commercial benefit.  I would ask the Court to recognize that the willful and purposeful acts necessary to intercept and exhibit the programming precede whatever steps are, or are not taken, by the pirate establishment to promote our programming to their customers.

14.    I would also ask the Court to recognize that the pirates do not generally advertise the fact that they intend to exhibit our programming unlawfully to the public for the practical reason that they wish to avoid the unessential risk of detection.  This of course does not preclude the very real possibility fact that the unlawful exhibition may well have been promoted by word of mouth or advertising that went undetected by the auditors, to their own customers to increase their financial gain on the night our fights are broadcast at their establishment.

15.    In addition, it is extremely unlikely that a pirate establishment would increase the costs of food or drink on the evening they broadcasting one of our programs unlawfully.  In my personal experience gained through many years in the promotion industry, it is most uncommon that even our legal locations would employ such a method to recover some of our commercial license fee back from their own

customers. I would point out however that since our auditors do not benchmark the prices charged for food or drink at the pirate locations subsequent to conducting the field surveillance on the evening our programming is broadcast, it is undetermined whether the prices paid by an auditor at a pirate location on fight night are in fact less than or equal to the normal prices charged by the pirate establishments.

16.    In this instance, I would further request that the Court take notice that the instant pirate establishment obtained a cover charge from its patrons and to view our company's program. As noted within the sworn affidavit of the auditor, payment of the ten dollar ($10.00) cover charge being collected from customers was a prerequisite for entry to the establishment while the exhibition of our programming was taking place.

17.    Clearly, this establishment with multiple television monitors, and a physical location in a major metropolitan area, had no justification to steal our programming and exhibit it for its own financial benefit, except to deny our company the commercial license fee to which was rightfully entitled.

///
///
///
///
///
///
///
///
///
///

**WHEREFORE** I respectfully request that this Court grant our request for enhanced statutory damages and our prayer for actual damages, plus our legal costs along with the attorneys' fees counsel has requested, and that such amounts be awarded against each of the defendants named in this action and in our favor.

Respectfully submitted,

Dated: June 26, 2008

**JOSEPH M. GAGLIARDI,** President
J & J Sports Productions, Inc.

Sworn to before me on this _____ day

Of _____, 2008

_____
        NOTARY PUBLIC

///
///                    See attached document
///
///
///
///
///

## CALIFORNIA JURAT WITH AFFIANT STATEMENT

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

1 _____

2 _____

3 _____

4 _____

5 _____

6 _____
    Signature of Document Signer No. 1                              Signature of Document Signer No. 2 (if any)

State of California

County of Santa Clara

Subscribed and sworn to (or affirmed) before me on this

26 th day of June , 20 08 , by
    Date            Month                    Year

(1) Joseph M. Gagliardi ,
                    Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (,)

(and

(2) n - 2 ,
                    Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

Signature Sharon Cunningham
                    Signature of Notary Public

SHARON CUNNINGHAM
Commission # 1779347
Notary Public - California
Santa Clara County
My Comm. Expires Nov 10, 2011

    Place Notary Seal Above

──────────── OPTIONAL ────────────

*Though the information below is not required by law, it may prove*
*valuable to persons relying on the document and could prevent*
*fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: Plaintiff's Affidavit

Document Date: June 26, 2008    Number of Pages: 11

Signer(s) Other Than Named Above: none

La Copa                    February 25 2006

| RIGHT THUMBPRINT OF SIGNER #1 | RIGHT THUMBPRINT OF SIGNER #2 |
|---|---|
| Top of thumb here | Top of thumb here |

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5910   Reorder: Call Toll-Free 1-800-876-6827

## PROOF OF SERVICE (SERVICE BY MAIL)

I declare that:

I am employed in the County of Los Angeles, California. I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030. I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On June 30, 2008, I served:

**PLAINTIFF'S AFFIDAVIT IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Israel Valencia Garcia (Defendant)
1007 Barnes Street
Mission, TX 78572

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on June 30, 2008, at South Pasadena, California.

Dated: June 30, 2008                          /s/ Terry Houston
                                              **TERRY HOUSTON**